Frankie TATUM, Plaintiff,

v.

Sheriff Jack HOUSER, Individually and Collectively in the Official Capacity, Defendants.

No. S79–0038C.

United States District Court, E. D. Missouri, Southeastern Division.

Nov. 14, 1979.

John M. Beaton, Kennett, Mo., for plaintiff.

Wendell W. Crow, Kennett, Mo., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### MEREDITH, Judge

This matter was tried to the Court. The Court has been duly advised by testimony, exhibits, and briefs, and makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff Frankie Tatum is presently confined in the Missouri Penitentiary at Jefferson City, Missouri. He was originally charged in Mississippi County, Missouri, with first degree murder and was confined in the Mississippi County Jail at Charleston, Missouri. At his request, he was granted a change of venue and on December 2, 1977, the case was transferred to Pemiscot County, Missouri, at Caruthersville and he was physically transported by the Sheriff of Mississippi County to the Pemiscot County jail. After a plea of guilty to first degree murder, plaintiff was sentenced to a term of life imprisonment and on December 20, 1977, was transported to Jefferson City to the penitentiary.

2. The Sheriff of Mississippi County, Norris Grissom, testified that while the plaintiff was confined in the jail at Mississippi County a number of threats were made against him, which led the sheriff to believe that an effort was being made to kill the plaintiff. He so advised Sheriff Houser and suggested to Sheriff Houser that the plaintiff not be permitted to be with other prisoners for his own safety. The plaintiff was confined in maximum security at the Pemiscot County jail from December 2, 1977, to December 20, 1977. The size of the jail cells in maximum security is approximately five and one-half feet by seven feet (5½′ X 7′).

3. Defendant Jack Houser is the Sheriff of Pemiscot County and has been since January 1, 1977. His prior background is that he was in the military police for two years and a member of the Missouri State Highway Patrol for eight and one-half years. He testified that the plaintiff, Frankie Tatum, was placed in maximum security for his own safety; that each of the cells had a blanket or a quilt and a mattress; that each cell was equipped with a toilet and above the toilet, on the same water line, was a drinking fountain and a sink; that each cell was furnished toilet paper, liquid soap, and that a shower was available near the maximum security cells in the bullpen and that prisoners in maximum security, on their request, would be taken from the maximum security to the bullpen for the purpose of taking a shower or for exercise. He testified that on one occasion he saw the plaintiff in the bullpen area heading toward the shower but did not see him take a shower. He further testified that he had no personal contact with the plaintiff during the 18 days that plaintiff was confined in his jail, that the day-to-day running of the jail is done by the jailer, who in this instance was Fred Boyett who was the jailer until he died on or about August 10, 1978. Fred Boyett was originally a party-defendant in this suit but since his death no one has been substituted for him.

4. Sheriff Houser further testified that he had no personal complaints from plaintiff about lack of medical care, food, blankets, showers, or the plaintiff's complaint that he needed a doctor on one occasion when he became ill. He further testified that he had no information about the plumbing not working in the plaintiff's cell or about odors in the plaintiff's cell caused by painting the jail nearby. Houser testi-

fied that the county court, which has charge of the budget, did not furnish bar soap, towels, wash cloths, toothbrushes or toothpaste; that if the family of the prisoner desired any of those items, they would be made available to them. He further stated that each prisoner was given three meals a day and that only the jailer could come into the maximum security area to bring food because the trusty did not have a key to the maximum security area and could not bring anything in there.

5. Frankie Tatum, the plaintiff, testified that there was a mattress on the bunk but there were no sheets or blankets furnished; that the commode, the sink, and the drinking fountain did not work on many occasions, and that in order to get a drink it was necessary for him to take a milk carton, flush the toilet, and catch the water as it came into the toilet. He stated that he could not get any exercise; that he was unable to take a shower; that he had no way to wash his body because he had no towels or wash cloths; that he had no pillow for his bed; that no toothbrush or toothpaste was furnished; that he got sick and was vomiting on one occasion and needed a doctor but that none was furnished; that he had no toilet paper in his cell; that sometimes he received meals and at other times he did not; that the trusty who brought the meals would take the meat from the dinner; that they were painting the jail nearby, causing fumes, and that the resulting fumes gave him a headache; that on Sunday when the church people came by to give religious instruction to the prisoners, he was unable to hear them because his cell was closed up; that the jail was either too hot or too cold; that there was no ventilation in the cell. He stated that he personally told the sheriff about all of these complaints on four or five different occasions and that nothing happened.

6. Richard Lee Worthon, another inmate of the penitentiary at Jefferson City, who was serving a sentence for armed robbery and assault with intent to kill, testified that he was there in maximum security for four or five days during the same period that plaintiff was confined, that Worthon was held one cell away in maximum security with an empty cell between he and plaintiff Tatum. He testified that each of the cells had a blanket and that showers were available, that toilet paper and soap were available, and that food was served regularly. He does not know if the plaintiff ever requested a shower, and during the period when he was confined in the Pemiscot County jail he only saw the sheriff on one occasion.

7. Steve Oatsvall, another inmate of the penitentiary at Jefferson City, who had been convicted of assault with attempt to kill, escape, assaulting a police officer, and armed robbery, testified that when plaintiff Tatum was in maximum security he, Oatsvall, was in the bullpen but that he could not see from the bullpen into the maximum security cells. He stated that there were showers available, running water was available, and occasionally toilet paper was available, that he painted a portion of the jail during the time Tatum was confined which caused odors in the jail and gave him a headache. He stated that on many occasions the showers were not working and that once he was sick and asked for a doctor from the jailer but the doctor never came, that he had to use a milk carton to get a drink of water out of the commode, that the trusties frequently take meat from the plates and sell it to the prisoners for a package of cigarettes. He stated that once he tried to escape and was placed in maximum security thereafter, and that while he was in maximum security he requested a shower and was not permitted to take one.

8. Bill Watkins testified that he was a plumbing contractor and was on call day or night; that frequently the prisoners put clothes, towels, and toilet paper in the commodes for the express purpose of stopping them up, and that it is a constant problem to keep the commodes and drains working; that during the year 1977 he was paid $5,000.00 by the county and that as far as he knew, during the entire year of 1977 all the plumbing and the showers were working properly except on those occasions when a drain would be stopped up by a prisoner.

9. The Court observed the plaintiff and his two witnesses. All of them are convicted felons and in the opinion of this Court their testimony is not believable. Their testimony is contradictory. Even two of the plaintiff's inmate witnesses agreed that blankets and mattresses were in the jail and that toilet paper, food, and showers were normally furnished at the jail. The jailer who originally was a defendant and is now deceased was at the jail every day, but the Court does not believe that the sheriff had occasion to discuss the plaintiff's complaints with him on four or five occasions. The sheriff testified that he was not aware of any complaints by the plaintiff and that he saw the plaintiff on one occasion when he was heading in the direction of the shower but that he did not see him take a shower.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. In order for a plaintiff to recover from a sheriff, he must show that the defendant sheriff had actual knowledge of the complaints which the plaintiff has. There is no such showing in this case.

2. While the sheriff is responsible for running the jail under the provisions of the Missouri statute, Section 221.020, R.S.Mo. (1969), this plaintiff has shown no actual damage as a result of his treatment.

3. Judgment will be entered in favor of the defendant, Sheriff Jack Houser, and against the plaintiff, Frankie Tatum, and this cause will be dismissed with prejudice.