489 F.Supp. 795 (1980)
David L. JONES et al., Plaintiffs,
v.
Myron V. HOUSER et al., Defendants.
No. S79-0076C.
United States District Court, E. D. Missouri, Southeastern Division.
May 5, 1980.
*796 Michael L. Richey, Richey & Price, Cape Girardeau, Mo., Timothy C. Harlan, Columbia, Mo., for plaintiffs.
Wendell W. Crow, Ford, Ford, Crow & Reynolds, Kennett, Mo., James E. Reeves, Ward & Reeves, Caruthersville, Mo., Manuel Drumm, Drumm & Leible, Sikeston, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This case is now before the Court on the motion for summary judgment of defendants Merideth, Dunavant, Bowen, and Pemiscot County, Missouri. Plaintiff brought this suit pursuant to 42 U.S.C. § 1983 alleging that the above defendants, as well as others, deprived him of his constitutional rights while he was voluntarily in their custody in the Pemiscot County Jail, by denying him necessary medical care.
Plaintiff's complaint alleges that in July of 1978 he was incarcerated in the Pemiscot County Jail. Though not mentioned in the complaint, it appears undisputed that plaintiff was initially admitted to the jail pursuant to his own request, for reasons of "protective custody". While in the custody of the jailers, plaintiff allegedly fell from a bunk in his cell and severely injured his back. Allegedly, his requests for aid were largely ignored for almost two days. Plaintiff is now a quadriplegic, and alleges that the inaction of the jailers largely contributed to the seriousness of his condition.
Named as defendants are the Sheriff of Pemiscot County, Myron V. Houser, and his deputies Billy Hopkins, Anthony Norrid and Allen Edwards; Judges D. J. Merideth, Jr., John Dunavant, and Phil Bowen of the Pemiscot County Court; and Pemiscot County. The Sheriff and his deputies are named in Count I of plaintiff's complaint due to their alleged failure to attend to plaintiff's serious medical needs. Count II names the Sheriff alone, due to his alleged failure to provide medical care to prisoners in his custody, as required by § 221.120 R.S.Mo. (1969), or to ensure that his subordinates provided such care, as required by § 221.020 R.S.Mo. (1969). Count III is against the judges of the Pemiscot County Court. That count alleges, in substance, that as judges these defendants were responsible for ensuring that prisoners received adequate medical care while in the custody of the County Jail, and that their failure in this responsibility contributed to plaintiff's injuries. Count IV seeks damages from defendant Pemiscot County due to the alleged county custom to deny adequate medical care to its prisoners.
It is clear that deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1977). In Estelle, at 103-104, 97 S.Ct. at 290-291, the Court equated the two concepts due to the prisoner's inability to care for his own medical needs.
These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," In re Kemmler, supra, [136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519] the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. Cf. Gregg v. Georgia, supra, [428 U.S. 153] at 182-183, [96 S.Ct. 2909, at 2929, 2925, 49 L.Ed.2d 859 (joint opinion). The infliction of such unnecessary suffering is inconsistent with contemporary standards *797 of decency as manifested in modern legislation codifying the common-law view that "it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."
We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173 [96 S.Ct. at 2925] (joint opinion), proscribed by the Eighth Amendment. (footnotes omitted.)
The Eighth Amendment, however, applies only to limit the type and degree of punishment which may be inflicted once the state has determined, through applicable Due Process procedures, that punishment may be inflicted upon an individual at all. Bell v. Wolfish, 441 U.S. 520, 535 n.16, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). Plaintiff herein was never convicted of any crime, and the Eighth Amendment is therefore inapplicable to plaintiff's claims.
In Bell, the Court stated that the relevant inquiry with respect to pre-trial detainees was whether the conduct of the officials involved amounted to punishment. "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell, id. at 535, 99 S.Ct. at 1872. This Court has no doubt that under reasoning similar to that employed in Estelle, supra, deliberate indifference to a detainee's serious medical needs would amount to "punishment" without due process of law.
A significant difference exists between plaintiff herein and a pre-trial detainee, however. A significant factor in the reasoning of Estelle is that the State had deprived the prisoner of his freedom and his ability to obtain medical care on his own. A corresponding duty therefore arose to provide adequate medical care. Plaintiff in the instant case, however, was in defendant's custody at his own request and was presumably free to leave at any time. The reasoning of Estelle does therefore not appear applicable.
This Court does not believe, however, that defendants were without responsibilities toward plaintiff. Though defendants may have been under no duty to provide plaintiff with "protective custody", once they did so plaintiff had a right to a safe and humane living environment. Deliberate indifference to plaintiff's serious medical needs infringes upon that right.
A similar situation was presented in Goodman v. Parwatikar, 570 F.2d 801 (8th Cir. 1978). That case involved the rights of a voluntarily admitted patient in a state mental institution. In explaining the basis of the reasoning through which it concluded that a cause of action was stated, the court said, at 804:
Although there is nothing in the Constitution which requires the state of Missouri to admit all patients seeking treatment, once Rachel was admitted as a patient, voluntary or involuntary, she had a constitutional right to a basically safe and humane living environment. . . .
If plaintiff can establish at trial a sufficient helplessness on the part of Rachel and a deliberate indifference toward Rachel's serious medical needs, including protection from assault, on the part of those caring for her, then plaintiff will have proved that she was denied her constitutional right to a humane and safe living environment while confined under state authority. (emphasis added.)
See, also, Harper v. Cserr, 544 F.2d 1121 (1st Cir. 1976). Plaintiff's allegations that he was sufficiently helpless so as to be unable to aid himself, and that defendants ignored his serious medical needs, therefore states a cause of action against those responsible.
The instant motion for summary judgment on the part of the defendant judges raises the issue of who was responsible for plaintiff's care. Plaintiff, in Count III, seeks to hold the judges responsible for the inadequate provision of medical care through the combination of a variety of *798 statutes. § 49.310 R.S.Mo. (1969)[1] provides that the County Court of each county is to erect and maintain a sufficient jail. The County Court is to pay for the cost of additional clothing or bedding for prisoners when necessary, § 221.080, the cost of boarding prisoners, § 221.090, the cost of guards, § 221.210, and the cost of medical care, § 221.120. The County Court should be apprised of conditions in the jail by the board of county visitors. §§ 221.340 and 221.350.
There is no indication in the relevant statutes, however, that the County Court is to do more than approve and pay expenses submitted to it by those responsible for the care of the prisoners. The responsibility for care of the prisoners appears to fall squarely on the shoulders of the county Sheriff. Tatum v. Houser, 480 F.Supp. 683 (E.D.Mo. 1979). Section 221.020 provides that the Sheriff shall have custody, rule, keeping and charge of the jail, and of all persons in the jail. Section 221.120 provides that if any prisoner is in need of medical care, the jailer, who acts on behalf of the Sheriff, shall procure such care. Bills for prisoners' medical assistance are submitted to the County Court for payment. Defendant judges have averred that all such bills submitted to them were paid, and plaintiff does not dispute this claim.
This Court can find no authority for holding the defendant judges liable for the harms allegedly inflicted upon plaintiff. The responsibility of providing medical treatment rests with the Sheriff, not the court, and the judges therefore can not be held liable due to an alleged failure with respect to this responsibility. The court has authority over the fiscal operations of the jail, not the internal operations of it.
The cases cited by plaintiff in which County Courts of Missouri were party defendants to suits challenging the conditions of county jails, Ahrens v. Thomas, 434 F.Supp. 873 (W.D.Mo.1977), modified in part 570 F.2d 286 (8th Cir. 1978); Goldsby v. Carnes, 365 F.Supp. 395 (W.D.Mo.1973), modified 429 F.Supp. 370 (W.D.Mo.1977), do not dictate a different result. These cases involved requests for broad injunctive relief to which the county court judges would be necessary parties. The motion for summary judgment of defendants Merideth, Dunavant and Bowen will therefore be granted.
The motion of defendant Pemiscot County will be denied, however. In Count IV, plaintiff claims that it was the custom of Pemiscot County to deny medical care to its prisoners. This clearly states a cause of action. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2035-2036, 56 L.Ed.2d 611 (1978). A county is not, as defendant Pemiscot County argues, immune from liability imposed via 42 U.S.C. § 1983 due to the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 667 n.12, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974). The Eleventh Amendment prohibits suits against a state, not a county. Defendant Pemiscot County's motion for summary judgment will therefore be denied.
NOTES
[1] Unless otherwise stated, all statutory references are to the 1969 Revised Statutes of Missouri.